[Civ. No. 8631. Second Appellate District, Division Two.—March 18, 1933.]

In the Matter of the Guardianship of the Person and Estate of ELAYNE MARMADUKE, a Minor. J. MORGAN MARMADUKE, Appellant, v. MABEL S. HILYARD, Respondent.

Paul C. Hill, McCaffrey & Scanland and Morgan Marmaduke for Appellant.

Joseph Scott and Benno M. Brink for Respondent.

STEPHENS, J.—On March 17, 1931, respondent was appointed guardian of the person and estate of Elayne Marmaduke, then aged about nine years. On September 16, 1931, J. Morgan Marmaduke, father of said minor (the mother is dead) filed a petition to have such appointment vacated and revoked and to have the custody of said child awarded to him. The superior court held against him and we are considering his appeal.

Some legal points are presented, but they all merge into the question of fact upon which the trial was had, to wit: Is appellant, under all of the circumstances obtaining, a fit and proper person to have the custody of the child? Appellant in effect concedes that he must show present conditions

to be so much better than those found in the guardianship proceeding as to justify a contrary holding. We shall briefly sketch the court's findings: In July, 1928, appellant was placed on probation for issuing fictitious checks. One of the probation requirements was that appellant remain out of California for ten years and he went to Kansas City, Missouri, taking Elayne with him. Parenthetically we here desire to express our doubts as to the legal rights, and our emphatic condemnation of the policy of American courts issuing decrees of banishment to citizens under any combination of circumstances. In the summer of 1929, respondent, with the knowledge, consent and request of appellant, returned Elayne to Los Angeles, California, and upon his request delivered her to his wife, Jean Marmaduke. Shortly thereafter the minor was taken from Jean Marmaduke by the juvenile court, declared a ward of the court and placed in the custody of Mr. and Mrs. William H. Stubblefield, her maternal grandparents, and parents of respondent. Respondent lives with the Stubblefields and the minor is well cared for in the home. The minor lived with appellant, his wife Jean Marmaduke, and her son, about the age of Elayne, from November 24, 1928, to July 13, 1929. During this period the minor was kept in a "filthy, unclean and unkempt condition"; sleeping part of the time with the said son, who frequently soiled the bed with urine. Also part of the time she slept in a room with Mr. and Mrs. Marmaduke and observed sufficient happenings to suggest lewd practices on her part. She was caused to do work beyond her years and she witnessed quarrels and a physical encounter between appellant and his wife. Whisky was drunk in her presence and she was urged to drink it. She was not sent to school. She was whipped unnecessarily by Mrs. Marmaduke. She was given insufficient nourishment, and her stepmother used profane language in her presence. While appellant was under probation he passed checks to which he forged his father's name and his parents paid out ten or twelve thousand dollars on such account. Appellant is of a weak character and the conduct of father and stepmother is "below that which is ordinarily found in a well-conducted home". The testimony shows that appellant has not contributed in any way to the minor's support since the appointment of the guardian.

Appellant presents a number of affidavits, one by his wife and others by persons of substance in Oklahoma, where the family has lived for some time, to the effect that appellant is working in a high-grade law office as law clerk, receiving something more than $250 per month. That he is living an exemplary life.

■ Appellant maintains that there is no evidence to support the trial court's decision. We cannot agree with him. The child's welfare comes first, and the right of a parent to the custody of his child comes next. In fact the child's welfare must indeed be seriously threatened to justify a court's decree separating its custody from that of the parent. The findings referred to present a bad picture; one, indeed, that would require remarkable evidence to convince a court that things had radically changed in the half year elapsing between the date they bear and the appellant's petition.

We think the trial court was well within its discretionary power in determining from all of the evidence that no relief should be granted petitioner.

Judgment affirmed.

Craig, Acting P. J., and Archbald, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 13, 1933, and the following opinion then rendered thereon:

STEPHENS, J.—In denying petition for rehearing in this proceeding we think it proper to respond briefly to points raised by petitioner.

Petitioner resides in Oklahoma and very shortly before the hearing on his petition to revoke the appointment of the guardian he secured an Oklahoma decree in accordance with finding II of that court, which is as follows:

"That Morgan Marmaduke, the petitioner herein, is a fit and competent person, and therefore as the sole parent of said minor is entitled to be appointed the guardian of the person and estate of said minor in this state."

■ There is no question here of giving full faith and credence to a sister state's court decree. The Oklahoma court never had jurisdiction of the person of the minor and the very words of the finding show that it recognized this.

A finding by the Oklahoma court upon the evidence submitted to it is not binding upon a California court in any proceeding of which it has jurisdiction.

■ Our opinion plainly states the dates when the acts occurred that influenced the court in its determination that the father was not a fit and proper person to be appointed guardian of the minor. We understood the stipulation made in the proceedings to revoke Mrs. Hilyard's appointment. Petitioner was to be allowed to show evidence of his fitness from September 20, 1929, the date of Mrs. Hilyard's petition, but the fact remains that the court determined petitioner's fitness as of March 17, 1931.

Petitioner thinks that we illegally looked into the findings of unfitness as found by our superior court. But they were introduced as evidence and were before the trial court and were of course in the court's mind when it passed upon the issues presented to it.

■ The petition for rehearing claims that the minor was brought to California from its father through fraud and misrepresentation. That matter was before the court in the proceeding which resulted in the appointment of Mrs. Hilyard as guardian and there determined adversely to petitioner's contentions. We appreciate the earnestness with which petitioner's attorney presents his case and it is a pleasure to say that we know him too well to require the assurance he gives us in his petition that ''We are not trying to hide anything from any court.''

Petition for rehearing denied.

Craig, Acting P. J., and Archbald, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 15, 1933.